IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Matthew Ariwoola, | Case No. 3:25-cv-03313-JDA |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Kristi Noem, *in her official capacity as Secretary of Homeland Security*; The Department of Homeland Security; Todd Lyons, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*, | |
| Defendants. | |

This matter is before the Court for a determination of whether to convert the temporary restraining order ("TRO") in this case into a preliminary injunction. On April 18, 2025, the Court issued a TRO enjoining Defendants from arresting, detaining, or transporting Plaintiff outside of the jurisdiction of the District of South Carolina or removing him from the United States pending these proceedings, and ordering that Defendants' actions in terminating Plaintiff's Student and Exchange Visitor Information System ("SEVIS") record shall have no legal effect and shall not obstruct Plaintiff in continuing to pursue his academic and employment pursuits that he is authorized to pursue as an international student with F-1 status. [Doc. 8.] The Court has extended the TRO three times for good cause. [Docs. 17; 23; 29.] After consideration of the parties' arguments

and submissions and the applicable law, the Court will convert the TRO into a preliminary injunction for the reasons outlined below.[1]

## BACKGROUND

**F-1 Status and SEVIS**

The Immigration and Nationality Act permits noncitizens to enroll in government-approved academic institutions as F-1 nonimmigrant students. *See* 8 U.S.C. § 1101(a)(15)(F)(i); 8 C.F.R. § 214.1(a)(2). Noncitizen students may obtain an F-1 visa to enter the United States and, upon entry, be granted F-1 student status and remain in the United States for their "duration of status," which is "the time during which an F-1 student is pursuing a full course of study at an educational institution certified . . . for attendance by foreign students, or engaging in authorized practical training following completion of studies." 8 C.F.R. § 214.2(f)(5)(i).

The U.S. Immigration and Customs Enforcement ("ICE"), a subagency of the Department of Homeland Security ("DHS"), tracks information on students with F-1 student status through SEVIS, a web-based system used to maintain relevant

---

[1] The Court concludes that a hearing is unnecessary in this case. "In general, where the issues presented largely involve questions of law and are not fact-dependent, a live evidentiary hearing may not be needed at the preliminary stage." 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2949 (3d ed.). "Rule 65 does not require an evidentiary hearing, so long as the party opposing the preliminary injunction has a fair opportunity to oppose the application and to prepare for such opposition." *S.C. Progressive Network Educ. Fund v. Andino*, 493 F. Supp. 3d 460, 466 (D.S.C. 2020) (cleaned up); *see Pierce v. N.C. State Bd. of Elections*, 713 F. Supp. 3d 195, 213 (E.D.N.C. 2024) (similar). "A hearing may be unnecessary when the parties have had ample opportunity to brief their position, submit affidavits, or otherwise make offers of proof." *N.C. Green Party v. N.C. State Bd. of Elections*, 619 F. Supp. 3d 547, 563–64 (E.D.N.C. 2022) (cleaned up). Defendants have had a fair opportunity to oppose the request for a preliminary injunction and prepare their opposition, and the Court concludes that a hearing would serve no purpose in this case; therefore, the Court will issue a preliminary injunction without a hearing.

information, which is managed by the Student and Exchange Visitor Program ("SEVP"). *See* 8 U.S.C. § 1372(a)(1)(A); DHS Study in the States, *About SEVIS*, https://studyinthestates.dhs.gov/site/about-sevis (last visited June 12, 2025); ICE, *SEVIS*, https://www.ice.gov/sevis/overview (last visited June 12, 2025).  To sponsor a student's F-1 status, a school must first file a petition for certification with SEVP using SEVIS. 8 C.F.R. § 214.3.  Schools certified by SEVP must maintain records for students with F-1 status and use SEVIS to report certain changes in information that affect those students' status.  *Id.* § 214.3(g).

A nonimmigrant student fails to maintain his F-1 status by engaging in unauthorized employment, willfully failing to provide full and truthful information to DHS, or being convicted of a crime of violence with a potential sentence of more than one year imprisonment.  *Id.* § 214.1(e)–(g).  Additionally, a student's nonimmigrant status may be terminated (1) "by the revocation of a waiver authorized on his or her behalf under section 212(d)(3) or (4) of the Act"; (2) "by the introduction of a private bill to confer permanent resident status on such alien"; or (3) "pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons."  *Id.* § 214.1(d).  A nonimmigrant student who fails to maintain status must leave the United States immediately or may seek reinstatement in certain circumstances.  *Id.* §§ 214.2(f)(5)(iv), 214.2(f)(16).  A decision denying a reinstatement request is not appealable.  *Id.* § 214.2(f)(16)(ii).

**Plaintiff's F-1 Status and SEVIS Record**

Plaintiff, a citizen of Nigeria, is a PhD student at the University of South Carolina ("USC").  [Docs. 1 ¶ 4; 7-1 ¶ 1.]  He has studied chemistry at USC since 2021, and his

research focuses on ways to make medications more effective and efficient. [Doc. 7-1 ¶¶ 1, 6.] Plaintiff renewed his F-1 visa in 2023 and was admitted into the United States for the duration of his status. [*Id.* ¶ 2.] He teaches over one hundred undergraduate students in four Introduction to Chemistry classes and is on track to graduate in December 2025. [*Id.* ¶¶ 4–5, 7.] To his knowledge, Plaintiff has complied with all requirements of F-1 student status. [*Id.* ¶ 3.]

On April 8, 2025, USC officials notified Plaintiff that his SEVIS record was terminated and that, as a result, he was barred from conducting his research and teaching his classes. [*Id.* ¶ 8.] The termination reason listed in Plaintiff's SEVIS record was "OTHER – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." [*Id.* ¶ 9 (internal quotation marks omitted).] Plaintiff has never been convicted of a crime, and his only interaction with law enforcement occurred in 2023, when he was wrongfully arrested on a Georgia warrant even though he had never been to Georgia. [*Id.* ¶¶ 10–11.] The prosecution voluntarily dismissed the Georgia case, and Plaintiff was never required to appear in court. [*Id.* ¶ 11.]

At the time Plaintiff filed this action, he averred that he would lose his F-1 status because he could not continue his research or teaching activities, which would end his duration of status. [*Id.* ¶ 12.] If Plaintiff does not maintain his F-1 status, he will lose his stipend, resulting in his being unable to pay rent and provide for his family; his research will suffer; and he will not graduate in December as planned. [*Id.* ¶¶ 13, 15–17.] Plaintiff also stated that he is scared he will be arrested, detained, and put in removal proceedings. [*Id.* ¶ 14.]

**Procedural History of This Action**

Plaintiff filed this action on April 18, 2025, alleging that the termination of his SEVIS record constituted a termination of his F-1 status because, by being barred from conducting his research and teaching classes, he cannot comply with the requirements of his F-1 status. [Doc. 1 ¶¶ 35–36.] He brings claims for a violation of the Due Process Clause of the Fifth Amendment and for a violation of the Administrative Procedures Act (the "APA"). [*Id.* ¶¶ 42–54.]

As stated, the Court has issued a TRO enjoining Defendants from arresting, detaining, or transporting Plaintiff outside of the jurisdiction of the District of South Carolina or removing him from the United States pending these proceedings, and ordering that Defendants' actions in terminating Plaintiff's SEVIS record shall have no legal effect and shall not obstruct Plaintiff in continuing to pursue his academic and employment pursuits that he is authorized to pursue as an international student with F-1 status. [Doc. 8; *see* Docs. 17; 23; 29.] When it issued the TRO, the Court set a briefing schedule for Defendants to respond to the motion for TRO so that the Court could determine whether to convert the TRO to a preliminary injunction. [Doc. 8 at 3.] On April 25, 2025, Defendants requested that the Court suspend the preliminary injunction briefing schedule because ICE had reactivated Plaintiff's SEVIS status, and they informed the Court that ICE was developing a new policy regarding SEVIS record terminations. [Doc. 13 at 2 & n.2.] The Court declined to suspend the briefing [Doc. 17], and Defendants have now filed a response in opposition to the request to convert the TRO to a preliminary injunction; Plaintiff has filed a reply; and all parties have filed supplements [Docs. 18; 22; 27; 28; 30].

5

**APPLICABLE LAW**

A preliminary injunction is "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991) (cleaned up). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *United States v. South Carolina*, 720 F.3d 518, 524 (4th Cir. 2013) (internal quotation marks omitted). Because "granting a preliminary injunction requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting, in a certain way[,] [t]he danger of a mistake in this setting is substantial." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994) (internal quotation marks omitted). Accordingly, the decision whether to grant a preliminary injunction is committed to the equitable discretion of the district court. *See Salazar v. Buono*, 559 U.S. 700, 714 (2010); *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007).

"The substantive standard for granting either a [TRO] or a preliminary injunction is the same." *Collins v. Durant*, No. 2:23-05273-RMG, 2024 WL 4143347, at *1 (D.S.C. Sept. 11, 2024) (internal quotation marks omitted). That standard is set forth in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). Under *Winter*, to obtain a preliminary injunction, the moving party must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20; *see also League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014). The last two factors—the balance of equities and the public interest—

"merge when the Government is the opposing party." *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (internal quotation marks omitted).  The party seeking a preliminary injunction bears the burden of establishing each of the four requirements.  *The Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *reinstated in relevant part*, 607 F.3d 355 (4th Cir. 2010) (per curiam).

## **DISCUSSION**[2]

**Live Case or Controversy**

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies," *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990); therefore, the Court first addresses Defendants' argument that there is no live case or controversy before the Court.  [Doc. 18 at 10–11.]  Defendants' position is based on their technical argument that the termination entered in Plaintiff's SEVIS record did not terminate his F-1 nonimmigrant status.  [*Id.*]  However, the Court agrees with the numerous other Courts that have addressed these issues and concluded that terminating a student's SEVIS record also alters the student's F-1 status.  *See Doe #1 v. Noem*, No. 25-cv-317-wmc, 2025 WL 1555382, at *8 (W.D. Wis. June 2, 2025) ("When considering the practical implications and effects of defendants' actions on the plaintiffs and other students with F-1 status, defendants' assertion that terminating a SEVIS record does not

---

[2] As will be discussed, this case is one of many filed across the country challenging SEVIS record terminations.  Numerous other courts have issued preliminary injunctions on facts similar to those in this action and have addressed and rejected many of the arguments Defendants advance in opposition to a preliminary injunction being issued in this case.  Where the Court agrees with the reasoning of its sister courts, it will rely on and cite to those cases rather than rehashing those well-reasoned opinions in full.

affect a student's legal status rings hollow."); *Doe v. Trump*, No. 25-cv-03140-JSW, 2025 WL 1467543, at *7 (N.D. Cal. May 22, 2025) ("[T]he Court concludes Defendants' argument that there is a distinction between having an active SEVIS record and maintaining lawful F-1 status is unpersuasive and unsupported by the record. By terminating Plaintiffs' SEVIS records, Defendants altered Plaintiffs' legal status within the United States."); *Doe v. Noem*, No. 3:25-cv-00023, 2025 WL 1399216, at *9 (W.D. Va. May 14, 2025) (concluding that the defendants' argument that terminating a student's SEVIS record does not also terminate his nonimmigrant status "offends common sense"); *Doe #1 v. Trump*, No. 25 C 4188, 2025 WL 1341711, at *10 (N.D. Ill. May 8, 2025) (concluding that the defendants' argument "disregards reality" and noting that "[t]he State Department, DHS, and sponsoring schools all follow the agencies' guiding sources and consider the termination of a student's SEVIS record equivalent to the termination of that student's F-1 status"); *Vyas v. Noem*, No. 3:25-0261, 2025 WL 1351537, at *7 (S.D.W. Va. May 8, 2025) (concluding that the matter presented a case or controversy in part because the plaintiff had "made a clear showing that Defendants effectively terminated his F-1 status when they terminated his SEVIS record"); *Isserdasani v. Noem*, No. 25-cv-283-wmc, 2025 WL 1330188, at *6 (W.D. Wis. May 7, 2025) (concluding that "defendants' argument that changing a student's SEVIS record to 'terminated' does not also have the effect of terminating their F-1 status is 'semantics'"); *Liu v. Noem*, No. 25-cv-133-SE, 2025 WL 1233892, at *8 (D.N.H. Apr. 29, 2025) (concluding that the evidence in the record at the preliminary injunction stage supported the conclusion that DHS terminated the plaintiff's F-1 student status when it terminated his record in SEVIS and, thus, "the

8

defendants' argument that there is no case or controversy is misplaced"). Therefore, this action presents a live case or controversy.

**Sovereign Immunity**

Defendants also argue that the Court lacks jurisdiction over Plaintiff's claims because the United States has not waived its sovereign immunity[3] with respect to Plaintiff's Fifth Amendment and APA claims. [Doc. 18 at 11–19, 22–25.] Regarding Plaintiff's claim for a violation of the Due Process Clause of the Fifth Amendment, Plaintiff correctly points out [Doc. 22 at 14–16] that "sovereign immunity does not apply when a plaintiff files suit seeking equitable relief against federal officials in their official capacities and alleging that those officials . . . acted unconstitutionally." *Strickland v. United States*, 32 F.4th 311, 363 (4th Cir. 2022) (explaining that "[t]hese types of claims are generally referred to as nonstatutory review claims"). Plaintiff's Fifth Amendment claim plainly states a nonstatutory review claim. Plaintiff has sued federal officials in their official capacities and has alleged that their actions in terminating Plaintiff's SEVIS record violated the Due Process Clause. [Doc. 1 ¶¶ 11–12, 42–47.] Plaintiff also seeks equitable remedies in the form of declaratory and preliminary and permanent injunctive relief. [*Id.* at 10.] Accordingly, the Court concludes that it has jurisdiction over Plaintiff's Fifth Amendment claim.

With respect to Plaintiff's APA claim, the APA waives sovereign immunity for actions in federal district courts by "person[s] suffering legal wrong because of agency action." 5 U.S.C. § 702. But the "waiver does not apply 'if any other statute that grants

---

[3] Sovereign immunity is jurisdictional in nature and, unless waived by the federal government, shields the federal government and its agencies from suit. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).

consent to suit expressly or impliedly forbids the relief which is sought' by the plaintiff." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702). Defendants argue that the APA's waiver of sovereign immunity does not apply because the Privacy Act of 1974 provides the exclusive means of challenging the termination of a governmental record. [Doc. 18 at 11–19.] However, this argument has been rejected by numerous courts that have held that the Privacy Act does not foreclose relief under the APA related to termination of SEVIS records. *See Doe #1*, 2025 WL 1555382, at *8–9; *Doe*, 2025 WL 1399216, at *7–8; *Roe v. Noem*, No. CV 25-40-BU-DLC, 2025 WL 1382930, at *4–5 (D. Mont. May 13, 2025); *Doe #1*, 2025 WL 1341711, at *8; *Vyas*, 2025 WL 1351537, at *8; *Isserdasani*, 2025 WL 1330188, at *5–6; *Liu*, 2025 WL 1233892, at *8–9. This Court agrees with the reasoning of its sister courts and concludes that Plaintiff's APA claim falls within the waiver of sovereign immunity in § 702 such that the Court has jurisdiction over the claim.

**Preliminary Injunction Factors**

Having determined that the action presents a live case or controversy under Article III and that the Court has jurisdiction over Plaintiff's claims, the Court now turns to a discussion of the *Winter* factors and concludes that each factor weighs in favor of issuing a preliminary injunction in this case.

   ***Likelihood of Success on the Merits***

As stated, Plaintiff alleges that the termination of his SEVIS record violated both the Due Process Clause of the Fifth Amendment and the APA. "When a complaint alleges multiple causes of action, a plaintiff need only show a likelihood of success on one claim to justify preliminary injunctive relief." *Doe*, 2025 WL 1399216, at *6. Because, as

10

discussed below, the Court concludes that Plaintiff demonstrates a likelihood of success on his APA claim, the Court need not address Plaintiff's Fifth Amendment claim.

Defendants first argue that Plaintiff has failed to assert a viable claim under the APA because the change to his SEVIS record is not a final agency action. [Doc. 18 at 19–21.] Agency action is subject to judicial review under the APA if it is either "made reviewable by statute" or is a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. To constitute final agency action, (1) "the action must mark the consummation of the agency's decisionmaking process," i.e., it "must not be of a merely tentative or interlocutory nature," and (2) it "must be one by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks omitted).

Defendants' argument that the change to a student's SEVIS record is not a final agency action has been repeatedly rejected by the courts. *See Doe #1*, 2025 WL 1555382, at *9–10; *Doe*, 2025 WL 1467543, at *8–9; *Doe*, 2025 WL 1399216, at *8 n.7; *Roe*, 2025 WL 1382930, at *5–6; *Doe #1*, 2025 WL 1341711, at *8–11; *Vyas*, 2025 WL 1351537, at *8; *Isserdasani*, 2025 WL 1330188, at *6–7; *Liu*, 2025 WL 1233892, at *9. This Court agrees with the reasoning of its sister courts and concludes that Plaintiff challenges a final agency action under the APA.

Under the APA, a reviewing court shall set aside agency action that is:

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

11

>   (D) without observance of procedure required by law;
>
>   (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
>
>   (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706(2).  Here, Plaintiff alleges that Defendants violated the APA in several ways.  [Doc. 1 ¶¶ 50–54.]  The Court focuses its analysis on whether the agency action was arbitrary and capricious.

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983).  Nonetheless, an agency "must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id.* at 43 (internal quotation marks omitted).  Here, Defendants have failed to offer *any* explanation for terminating Plaintiff's SEVIS record.  Indeed, in their response memorandum, Defendants do not argue that Plaintiff is unlikely to show that their action was arbitrary and capricious.  [*See* Doc. 18.]  In support of their opposition to a preliminary injunction, Defendants have submitted only a generic declaration from Andre Watson, the Assistant Director of the National Security Division for Homeland Security Investigations.  [Doc. 18-1.]  Watson's declaration states in part that, "[b]eginning in March of 2025, ICE reviewed and terminated numerous SEVIS records due to information provided by U.S. Department of State and criminal databases."  [*Id.* ¶ 4.]  This explanation, which is not specific to Plaintiff, fails to demonstrate "a rational connection between the facts found

12

and the choice made." *See Motor Vehicle Mfrs. Ass'n of U.S.*, 463 U.S. at 43. Accordingly, Plaintiff is likely to succeed on the merits of his APA claim.

### *Irreparable Harm*

To satisfy the irreparable-harm element, a plaintiff must make a "clear showing" that, without injunctive relief, he will "suffer harm that is neither remote nor speculative, but actual and imminent." *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 (4th Cir. 2019) (internal quotation marks omitted). A harm qualifies as irreparable when it "cannot be fully rectified by the final judgment after trial." *Id.* (internal quotation marks omitted). Here, as other Courts have concluded, this Court also concludes that Plaintiff has satisfied his burden of showing a likelihood of irreparable harm absent preliminary relief given that his academic research and teaching were interrupted, and he continues to fear arrest, detention, and removal proceedings.[4] [Docs. 7-1 ¶¶ 8, 12, 14, 17; 22-5 ¶ 1]; *see Doe #1*, 2025 WL 1555382, at *10–11 (concluding that the plaintiffs had shown a real risk of irreparable harm, including the loss of timely academic progress; risk of deportation; and mental anguish and fear from the threat of arrest, detention, and deportation); *Roe*, 2025 WL 1382930, at *8–9 (concluding that the plaintiffs showed a likelihood of irreparable harm based on interruption to their education and work authorizations); *Isserdasani*, 2025 WL 1330188, at *8 (concluding that the plaintiff had credibly demonstrated that he faced irreparable

---

[4] Additionally, the Court rejects Defendants' argument [Doc. 18 at 27 n.17] that Plaintiff's request for a preliminary injunction is rendered moot by the reactivation of his SEVIS status, *see Vyas*, 2025 WL 1351537, at *7 (concluding that, pursuant to the voluntary cessation doctrine, the case was not moot even though the plaintiff's SEVIS record had been reactivated).

13

harm based on the loss of timely academic progress and suffering mental anguish and fear).

### *Balancing of Equities and Public Interest*

Defendants argue that the final *Winter* factors weigh against issuing a preliminary injunction because control over immigration is a sovereign prerogative and the public interest in enforcement of immigration laws is significant. [Doc. 18 at 33–34.] However, as another court in this Circuit has noted, although the government "has broad authority to enforce immigration laws, there is no public interest in allowing government officials to violate applicable regulations." *Doe*, 2025 WL 1399216, at *13; *see also Roe v. Dep't of Def.*, 947 F.3d 207, 230–31 (4th Cir. 2020) (recognizing that "the public undoubtedly has an interest in seeing its governmental institutions follow the law" (internal quotation marks omitted)). The relief Plaintiff requests will restore his ability to remain in the United States to complete his degree, and granting preliminary relief in this case will maintain the status quo. Defendants have put forward no evidence demonstrating how a preliminary injunction would cause them injury or harm. On balance, these factors weigh in favor of a preliminary injunction.

**Security**

Rule 65(c) states that a "court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Even so, a "district court retains the discretion to set the bond amount as it sees fit or waive the security requirement" but "must expressly address the issue of security before

14

allowing any waiver." *Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013), *abrogated on other grounds by Winter*, 555 U.S. 7.

Defendants request that, if the Court grants preliminary injunctive relief, it require Plaintiff to post security. [Doc. 18 at 34–35.] However, because it is unlikely that any harm will come to Defendants because of a preliminary injunction, the Court exercises its discretion to waive the bond requirement provided for by Rule 65(c).

## CONCLUSION

Wherefore, based upon the foregoing, the Court converts the TRO in this case into a preliminary injunction.[5] Accordingly, it is ORDERED that:

(a) Defendants are enjoined from arresting, detaining, or transporting Plaintiff outside of the jurisdiction of the District of South Carolina or removing him from the United States pending these proceedings.

(b) Defendants are enjoined from terminating Plaintiff's SEVIS record or reversing the reactivation of his SEVIS status without further showing and approval by this Court.

(c) Defendants are enjoined from taking any direct or indirect action that is inconsistent with Plaintiff's maintaining lawful F-1 student status, including that Defendants shall not obstruct Plaintiff in continuing to pursue his academic and employment pursuits that he is authorized to pursue as an international student with F-1 status.

---

[5] The Court notes that Defendants have informed the Court that a nationwide injunction has been issued. [Doc. 27 ¶ 6.] However, Defendants have not taken a position as to how this nationwide injunction affects the present case. Because the validity of nationwide injunctions is currently under review by the Supreme Court of the United States [*see id.* ¶ 7] and Defendants do not take a position concerning the nationwide injunction, the Court declines to find that the need for a preliminary injunction in this matter is superseded by the nationwide injunction.

IT IS SO ORDERED.

                                                              <u>s/ Jacquelyn D. Austin</u>
                                                              United States District Judge

June 13, 2025
Columbia, South Carolina